Good morning. May it please the court, my name is Bill Janego, and I represent the plaintiff Appellant Harold Hall. The district court in this case did not have the benefit of this court's subsequent decision in Costanez v. Department of Social and Health Services, and the reason it's significant is because it makes clear and explains that Mr. Hall's claims do not have to be pigeonholed into Devereux's two propositions. And what it allows then, because prior to that time, everyone was laboring, I think, under the misapprehension that Devereux defined two kinds of false evidence claims, and Costanez explains correctly that it was really just two propositions that Mr. Devereux could have used to prove his claim in that case. And once you realize that he's not pigeonholed into those two claims, what Costanez allows you to do is to step back and say, what are Mr. Hall's claims? Can I ask you about our pigeonhole, which is that your client raised his fabricated evidence claims, so this has been around in our court for a while, and the Ninth Circuit affirmed the district court's summary judgment on the fabrication claims and sent back only the coerced interrogation claims or coerced confession claims, and that's what the district court had before it. So I'm not sure how we could then say, well, we'll go back and look at some additional claims. At that point, I don't think we're before the district court, or explain to me how it was before the district court, given our prior ruling. I think, Judge Aikode, you're correct. That's the way it went back to the district court, absolutely, but it was not a false evidence claim and a coercion claim. Devereux said there are two ways you can prove a false evidence claim. Now, when you step back and look at Devereux, it becomes clear, and of course no one really realized it at the time, but that Devereux involved third-party witnesses, and the court explained, Mr. Devereux can prove his false evidence claim, which was a different kind of false evidence claim because he wasn't convicted. He was just charged, and so what the court said was that the false evidence claims that have to do with a wrongful conviction can be applied to the context of a prosecution, even if you're not charged or put in jail, you still have a false evidence claim, and Mr. Devereux can prove them in two ways. That's what we argued before. That's what the defendants brought up in the summary judgment motion in front of Judge Schiavelli. Everybody compartmentalized it. They would have brought a broader claim if they didn't cause damage, and so I guess I'm still struggling with how can we reach a claim that wasn't before the district court? Your Honor, I think that if you look at our complaint, which is in the second volume of experts of record, it is a broad claim, and it has two prongs to it. It's not the Devereux prongs. The way Devereux got introduced to this case, we didn't plead Devereux in the complaint. The defendants brought it up in the first summary judgment motion and said, in order to be able to prevail and get to trial, you have to fit within one of these two categories. We argued that we did, and that's how it occurred. I think the reason why this court can now go back, I began by saying I don't think it's, I mean, the district court didn't have the Christiana case in front of it because I'm just wondering, or I'm trying to understand how it had any claim in front of it other than the one that we remanded to the district court, which was the coerced interrogation. So I understand your complaint was broader, but the summary judgment that we affirmed seemed to sweep those claims away. I understand. And unless the court agrees that that co-standard changes the way that you have to look at Devereux, then we are constrained to the second prong of Devereux. So there's two points. Counsel, if I could interject. Sure, of course. I've been sort of mystified in this case as to why, and we're only talking about the prongs of Devereux. The first prong may be gone on the first appeal. And the second prong, what's before us now? Why isn't there a claim that his Fifth Amendment rights were violated? And that being the basis for a 1983 case. Why isn't that claim presented in his complaint or in your briefs? Because he was not given his Miranda rights. When he asked for a lawyer, he was told only guilty people would get lawyers. And then he was allegedly coerced into confessing on threat he'd be killed in the general population by bloods or crips. So, you know, my question is, first, why is the Fifth Amendment claim not presented before us? Well, if it is, explain that it is and why. And second, if it's not, do we have the power to send the case back to the district court by asking or requiring the district court to permit amendment of the complaint to assert the Fifth Amendment claim as a predicate for violating 1983? Judge Gold, I do think that you have the power and authority to remand to the district court to consider it as a Fifth Amendment claim in violation of the self-determination provision. And that is pled in the complaint. If you look at paragraphs 13 to 17, which is at the second volume of the excerpts of record at page 104, it says explicitly that Detectives Arneson and Clockard did not Mirandize Mr. Hall. What happened in the district court... I read, when I read the paragraphs you pointed to, it describes what Judge Gold described, which is the factual predicate for a Fifth Amendment claim, but I didn't actually see a Fifth Amendment claim. There is not a Fifth Amendment claim stated explicitly in the complaint. What happened in the district court in the first time, before the first summary judgment motion, was we voluntarily dismissed our Fourth Amendment claim because it was time barred by a Supreme Court decision. At that same time, we wanted to amend the complaint to allege a Fifth Amendment claim explicitly, even though I think the facts are there. We did not mention Fifth Amendment. We prepared a proposed complaint, moved to file it, and Judge Schiavelli denied that motion because we had not met and conferred with the defendants. Did you appeal that ruling? We did not appeal that ruling because, again, at the time, everyone thought that we were restricted to Devereux's two propositions, but I do think the complaint allows that, and I think that given the development since that time, that it would be fair to Mr. Hall to allow him to now assert what is factually in the complaint and which the defendants have had notice of all along, which is that there is a Fifth Amendment violation here. They did not Mirandize him. When he asked for a lawyer, they continued to question him and said only guilty people asked for lawyers. So I absolutely think, Judge Gould, that that would be appropriate for the court to do in this circumstance. And, again, because Costanez really changes the way you look at Devereux, it would be fair for another reason. Because, remember, the way we started out was that the defendants were saying Devereux controlled this case. We responded in a summary judgment by saying we meant Devereux. And when we went back the second time in front of the district court, what they then said was, oh, Devereux doesn't apply here. And so Mr. Hall then is left with having argued that Devereux controls his claims, based on what they said in the summary judgment. We went up to this court the first time based on Devereux applying, and then we went back to the district court and the district court said, Devereux doesn't apply. And at that point, at least we should step back a minute and say, is there a Fifth Amendment claim here? Because the playing field has changed. And I don't want to be unfair to the district court because, honestly, it didn't know about Costanez. But it did radically change what this court had remanded. Remember, when the court remanded on Devereux, it was remanding for the second prong. The district court didn't carry out that mandate. The district court said, Devereux doesn't apply here. So the Ninth Circuit, what the district court determined, as I understood it, I mean, the Ninth Circuit sent it back not saying that the second prong of Devereux applied, but just that the district court was wrong in saying that it was precluded from addressing it by the habeas decision that the Ninth Circuit had made. So you're not arguing that the district court was wrong or ignored our mandate in the way it analyzed your second prong claim, are you? I know you may disagree with the analysis. Well, we respectfully made that argument in the brief, but I don't think that it's our best argument or our strongest argument. But I do think that when you look at what happened, and, again, I understand that the district court reevaluated, we actually agree with the district court that Devereux doesn't apply in this circumstance because Devereux was really about a third-party witness falsification of evidence claim. The district court also analyzed a 14th Amendment substantive due process. It did. Is that still before us? I think that would be before the court as well. Our position is that when it comes to that, even if you just look at us, a 14th Amendment substantive due process claim, that Mr. Hall has alleged facts here and that we presented evidence in opposition to the motion for summary judgment that would allow a jury to find that his statement was taken in violation of the 14th Amendment. And most importantly in that regard, what's critical about this case is that Detective Dufert, because Detective Dufert was Mr. Hall's lifeline in the jail. He was a cooperating witness. He was wearing a wristband that noted that he was a cooperating witness. He had been threatened in assault. And when Detective Arneson called Mr. Hall down to interrogate him on September 11th, he insisted that Mr. Dufert be there, that Detective Dufert be there. Detective Dufert, in the record, in his deposition, said, I told him I was too busy, I couldn't be there. And yet Detective Arneson said, no, you have to be there. The reason he wanted Detective Dufert there was because he wanted to make sure that Mr. Hall knew that he could not rely on Detective Dufert to protect him anymore, that he was going to go back to general population, or he was going to go into general population, if he did not go ahead and give them what they wanted, which was that he affixed his name at the end of the statement. And this is also something that's significant, and that is that Mr. Hall did not give the detective these facts. This is not a confession in the traditional sense. The record shows that Detective Arneson was stating the facts. Detective Crocker wrote them out. It's his handwriting. The only thing that Mr. Hall did was he printed his name at the end of that statement, and he did that, and on these facts a jury could find he did that, because of the psychological coercion that he faced, which would amount to a substantive 14th Amendment due process violation. So we think that would also be appropriate, and that would be a separate ground for reversal, as would a remand on the Fifth Amendment claim. Do you want to save the rest of your time? I would like to save my time. Thank you very much. Good morning, Your Honors. Lisa Berger, Deputy City Attorney for Appalachee City of Los Angeles. The legal question before the Court is whether or not there is a viable cause of action on which the plaintiff has presented tribal issues. He can't go under Fifth Amendment because it wasn't fled, and as he has admitted here, he did not appeal the denial of his request to amend his complaint to add the Fifth Amendment. So that is... Counsel, if I may interject, I'm on the same question in my mind that I asked the appellant's counsel. Is it permissible for our court to send this back to the district court to let him amend his complaint to assert the Fifth Amendment claim? Even though he did not appeal it earlier, he didn't raise it in his brief, it's not before us now, but still it seems like a travesty of justice because it seems it was determined that his Fifth Amendment rights were violated and his confessions were inadmissible and he was in jail for 19 years. Why shouldn't we let him amend his complaint and let him pitch his case to a jury? Because it's been waived, Your Honor. He didn't raise it below. When he attempted to amend his complaint, that was denied. He did not appeal that. He had his opportunity to bring that issue here before the Ninth Circuit. He chose not to. Counsel, don't we have the power in the interest of justice and equity to say although he really waived it, we're going to overlook that and remand it for a Fifth Amendment claim to be made because his complaint is broad enough to include the Fifth Amendment as well as the Fourteenth? Well, Your Honor, there is a Supreme Court case, and I apologize. I think it was Albright. I'm not entirely sure. But where there had been a dismissal of a Fourteenth Amendment claim on a Fourth Amendment violation and the Supreme Court said you can't bring this under the Fourteenth Amendment. It has to be brought under the Fourth Amendment, which is the more specific portion of the Constitution, and affirm that dismissal. The Supreme Court did not say let's send it back so that you can correct your mistake and now try this case under the Fourth Amendment. Counsel, but first they could do that because it's discretionary and may be a very high barrier to our doing this. But the question I'm asking is if they wanted to, could they have sent it back? And it seems to me the answer is yes, that we have a whole set of doctrines. Normally we won't look at an issue that wasn't raised in the district court. We normally won't look at an issue that's not raised in the opening brief. But in all those doctrines, there usually are some exceptional cases where we say if the substance of the facts are there, we can look at legal issues. And in exceptional circumstances, in the interest of justice, we have the power to alter those procedures. So really my question is not going to whether we should in the first place do it, but my first question was do we have the power to do it? And if you say yes, we do, but we shouldn't, then I'd be interested in that argument. Or if you say no, we don't have the power, then I'd like to know what the authority is for that. Well, as I said, my authority would be that when this same type of situation was before the United States Supreme Court, it did not say anything about while we could send this back to allow the plaintiff to readdress and reframe the issues we choose not to. It merely said we are affirming the dismissal of the 14th Amendment claim because it should have been brought as, if I remember correctly, a Fourth Amendment claim. And in this case, if I might apologize, but this is not just the first time on appeal. This is the second time on appeal. So this particular plaintiff has had multiple opportunities over a number of years, over extensive briefing, to request the remedy that you're asking for, that it be allowed to address this as a Fifth Amendment claim. And instead, if you look back through the appellate briefs and the summary judgment pleadings and everything else, Mr. Hall said repeatedly, we are not bringing this as a Fifth Amendment claim. We don't need to bring this as a Fifth Amendment claim. So for this court to now decide to send it back for a Fifth Amendment claim, I believe would be beyond this court's authority. Now, you don't – I'm inferring from what you're saying that you don't know standing here whether there is a legal barrier to us doing that. But on the other hand, this issue was not raised by the other side, so there's no reason you would have researched it. So is that correct? You don't know necessarily that there's a legal barrier, but you didn't have the occasion to research it either? That would be correct, Your Honor. Your Honor, in 23 years of doing appellate work for the City of Los Angeles, I have never seen a case that did something like that. But I have also, to my memory, never seen a case that addressed specifically this question and analyzed it in any way. And certainly if the court were going to consider something like that, we would request the opportunity to do that research and attempt to brief that question. So, counsel, if we entered an order that asked both parties to address, first, whether we have the authority to send this back with instructions to permit amendments of the complaint, and second, if we have authority, what would you argue we should do, would that type of order give you a chance to say everything you might want to say upon research? If I can't have the court just not consider that at all, which would be my preference, then yes, that would provide us with the opportunity we would need. Well, we might not consider it. I guess that's what we'll discuss in conference. I guess what's really bothering me so much here is that it seems like you said there have been two appeals, or this is the second, but there was also the habeas case, right? So two civil appeals on this case, but there was a prior habeas case that led to his release, correct? There was, and that, of course, brings us back to the footnote that was the reason in the first appeal there was the partial reversal, because in the habeas case, this court said in the footnote that it found no merit to the coerced confession claims. So to the extent there was any Fifth Amendment claim raised at the habeas stage, this court found no merit to it. So basically what we have is, putting that one possibility aside, Mr. Hall cannot proceed on the Fifth Amendment because it has not been raised and is waived, cannot proceed on the Fourteenth Amendment because there is no evidence that rises to the level of shocks to conscience. Now, can you address that briefly? What shocks the conscience? I think our cases have changed over time, and that it's, although we've said things tantamount to torture, some of the cases don't seem to present that scenario, as in Crow, for example. Why doesn't this arise to the level of what we've recently said constitutes a substantive due process violation? Obviously, that is a question that becomes very, very factual, and as Your Honor has noted, the cases are very different in that interpretation, and I think there's actually a fairly lengthy portion of my brief where I break down the different allegations. But this was basically an experienced young man. He was young, but he had had numerous incidents with the criminal justice system. He was questioned on the murder for two hours to six hours. There's evidence, depending on whether you go by what he says or by what the extrinsic evidence shows. The allegation of threatening, I would have to disagree with that terminology. Basically, all that was said was if you're charged with murder and you're convicted, you will go to state prison, and once you get to state prison, you will there be confronted with people who may very well want to harm you. He was never told that if he didn't cooperate, we're taking away your protected status right here and right now. In fact, his protected status was something that was provided by the county. It wasn't actually completely on Detective Dufert's doing. Any run-ins he had had thus far in his custody had nothing to do with his testimony in the 54th Street shooting. It was merely because he was protected status, ironically. And the speculation that Detective Arneson wanted Detective Dufert to be there because it would make Mr. Hall fear that he would be put in the general population, it's just as easy to speculate that Detective Arneson wanted Detective Dufert there because if he got a concession to having been a driver in the 54th Street shooting, it might make it easier to find out more about the Hall, I'm sorry, the murder, the Ramey and Duncan murders, and maybe they wanted to work. I mean, that is complete speculation that the mere presence of Detective Dufert there was somehow meant to put pressure. The entire package, the entire scenario of everything in context does not rise to the level of cases that found the psychological torture, and it is more comparable to the cases that didn't, such as Stute. So if there isn't psychological torture, if it doesn't rise to the level of 14th Amendment, it may not be good police work, it may not have been everything we would like it to be, but it doesn't rise to the level of 14th Amendment cause of action. And for Mr. Hall, who basically is coming in now and saying that Kostanich somehow changed things, Kostanich didn't get rid of Devereaux. All it did was say that in meeting the two prongs of Devereaux, more types of evidence might be permissible than the way it was completely framed. So Kostanich did not change the playing field to the extent that Mr. Hall would have you believe, but what he wants now is to say, well, I have a generic constitutional violation. It's not Fifth Amendment. It doesn't need to shock the conscience. It doesn't need to really meet anything that was in Devereaux or any other prior case. It just, we think we ought to be able to tell a jury that, gee, this wasn't fair, and the city should be held accountable. And there's simply no authority or reason to allow that at this stage of the proceedings, where we have gone through so many stages where we have whittled this case down to where we now have the core kernel of whether the confession rises to the level of fabrication of evidence, which is the only claim that they have pursued. And the city's position is that the district court correctly said there isn't enough here to go to a jury. And we would ask that that judgment be affirmed. There's no further questions. No further questions here. Thank you. If I may just. Please. Thank you very much. I have three points. First of all, Judge Gould, we'd be happy to have supplemental briefing to address that question if the court deems it appropriate. However, I do want to point out that we did reference our Fifth Amendment claim in our opening brief. It's at page 40. And we specifically, in footnote 10, talk about how we had raised it the first, how we sought to amend the complaint, that we were denied leave to do that because, not because the defendants were going to oppose the motion, but because we had not met and conferred. So it was that reason that we were denied leave to amend the complaint. But in your opening brief, counsel, and I apologize for interrupting, as I recall you did not ask us to amend and to permit you to amend your brief. You noted the history, but you didn't request this relief. Judge Gould, we did not explicitly ask that the court remand for purposes of allowing us to amend the complaint. I think what we argued, or intended to argue, was that the complaint was broad enough to allow a Fifth Amendment cause of action there, but we did not explicitly ask that it be remanded to allow us to. I realize you have other theories and you wanted to prevail on your other theories, but you didn't say even if, or if we lose on the other theories, then we should be allowed to amend. So it's kind of like a sua sponte thing if we do. Well, I think that on page 40 of the opening brief, we do say that the purpose of fact pleading is to give the defendant fair notice of the claims against him and parties have an opportunity for discovery and that we didn't need to set forth the legal theories. But I don't want to get hung up on that point, Judge Gould. I do think that waiver is not a jurisdictional defense. It's a discretionary doctrine. So yes, the court has the power to remand for that purpose. Why should the court do that? Because the playing field really changed on the remand. Remember, the court remanded on Devereux, and the district court said Devereux doesn't apply. Okay, we agree with that. But at that point, you've got to say, okay, what does apply? I mean, you can't have litigated the case for two years under the assumption that Devereux applies with an appellate decision from this court applying Devereux, and then we get back to the district court and they say, guess what? Devereux doesn't apply. So I think at that point, as a matter of equity, we should be allowed to do that, and I think it would be fair to Mr. Hall. So I would ask the court to do that. Nevertheless, I do think that the facts here are sufficient to make out a 14th Amendment due process claim. If you look at the collection of facts here that occurred during that interrogation, there is enough psychological coercion to come under Duke Cooper and also Crow. The threats to Mr. Hall were real, tangible, and you can look at the record for yourself and evaluate Detective Morrison's credibility with Detective Dufour's credibility about the purpose of him being there. And I think that that would allow a jury easily to find the facts in our favor. And so if the court doesn't remand on the Fifth Amendment and allow us to amend, I would submit that we do make out a 14th Amendment due process claim. Thank you very much. Thank you. The case of Hall v. City of Los Angeles is submitted, and we'll take a brief 10-minute break before hearing the case of Wilson v. Clayton.
judges: Nelson, Gould, Ikuta